DUDLEY v. STATE OF INDIANA.

[No. 268S39. Filed October 28, 1970. Rehearing denied December 16, 1970.]

*Frederick J. Graf*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Walter E. Bravard, Jr.*, Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from the Marion County Criminal Court, Division 1. The appellant and two other men were charged by affidavit with committing a robbery on or about December 22, 1965. Appellant was found guilty as charged by a jury of the crime of robbery.

The evidence introduced at the trial indicates that on December 22, 1965, three men entered Oscar's Loan Company at 356 Indiana Avenue, Indianapolis, Indiana. The business was being operated at the time of the robbery by Jerome Patsinger. One of the three men asked to see a ring that had previously been shown to him. Patsinger proceeded to get the ring from a safe and as he turned around he was confronted by one of the men holding a .45 caliber pistol. Patsinger and the other employees of the store were marched to the back of the storeroom, where the men took Patsinger's ring and wallet, and then made him lie down on the floor. The other employees were also told to lie down. The police were summoned shortly after the three men left the loan office.

Patsinger testified that the drawers of the cash register, the drawers in the Loan Department, the layaway safe, and

the pawn safe were open and that approximately $2,200 in cash and between 150 and 200 items of jewelry were missing.

Appellant alleges the trial court denied appellant a fair trial in allowing the State of Indiana to amend its affidavit on the day of trial. The affidavit, prior to the correction, read as follows:

"* * * which property the same Jerome Patsin[g]er then and there unlawfully held in his possession and was then and there the property of Oscar's Loan Office, Inc., * * *"

Appellant objects to changing the word "unlawfully" to "lawfully." Inasmuch as both the crime alleged to have been committed and the defenses available were not affected by the amendment to the affidavit, this is a change in form rather than in substance. This is in accordance with our decision in *Smith* v. *State* (1969), 252 Ind. 148, 246 N. E. 2d 765, where a conviction was upheld that arose out of this same robbery. We stated in *Smith* v. *State* (1969), 252 Ind. 148, 246 N. E. 2d 765, 766:

"It is not necessary to allege whether the person from whom the property is taken holds the property lawfully or unlawfully, and in our opinion such an allegation is immaterial, it being possible that one holding property unlawfully could be the victim of a robbery. *State* v. *Pokini* (1961), 45 Haw. 295, 367 P. 2d 499, 89 A. L. R. 2d 1421; *State* v. *Wales* (1929), 168 La. 322, 122 So. 52.

"The evidence, so far as putting the person in fear and taking the property from such person, would be the same in either instance. To us the amendment permitted by the court in this case comes clearly within Burns' § 9-1133 and is one of form and not substance and the defendant was not harmed thereby.

"Under *Dixon* v. *State* (1945), 223 Ind. 521, 62 N. E. 2d 639, a reswearing of the original affiant is not required in the case of such technical or minor amendments, even though the trial has begun. In the case before us the trial had not yet started."

We find no error in the court permitting the amendment.

Appellant also contends he was deprived of a fair trial because the judge permitted the police officer who was assigned to the investigation to remain in the courtroom and then later to testify even though the prosecution's motion for separation of witnesses was granted by the court. Here, we need only point out that the trial court granted the State's request that said police officer, Lieutenant Dabner, be permitted to remain in the courtroom. During the trial, appellant made no objection to the court's action and therefore cannot raise this objection for the first time on appeal. *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815; *Jones et ux.* v. *Stawicki et ux.* (1953), 233 Ind. 272, 111 N. E. 2d 718. Separation of witnesses is a matter within the discretion of the trial court and such rulings will not be disturbed unless there is a manifest abuse of said discretion. 28 I. L. E. § 43, *Trial*, 40; *Cincinnati, etc. R. Co.* v. *Little, Admin.* (1921), 190 Ind. 662, 131 N. E. 762. Sometimes a court permits a prosecuting or other important witness to remain in the courtroom to aid the State in the presentation of its case, just as the defendant assists in his defense.

Appellant objects to the introduction of what he calls a "mug shot" into the evidence. This is a photograph of a third member of the trio, Charles Rodney Evans, who was a fugitive. It was used to identify this third member who was not present and, as stated, was a fugitive. We have inspected this "mug shot" and it appears as an ordinary photograph, since the bottom part has been cut off. We cannot see from an examination of this photograph that it would indicate to the jury that this third party, Charles Rodney Evans, was ever convicted of a crime or was ever in the custody of the law, although the evidence, aside from the photograph, revealed he was a fugitive at the time of the trial. This was not a photograph of the defendant and certainly was not a "mug shot," even of a third party.

The appellant complains that irreparable harm resulted because a juror had to be admonished by the trial court not to take notes during the trial. There is no evidence that any further notes were made by the juror after the admonition of the court. It is interesting to find a question such as this raised during a trial, where practically everyone immediately concerned in the trial itself is taking notes, including, in most cases, the judge himself. We as lawyers and judges recognize that where a judge hears evidence without the jury, he takes notes as a reliance in support of his memory. Just why jurors should be deprived of this very practical means of clarifying and supporting their memory in arriving at a conclusion is somewhat astonishing. We recognize that many times a name, date, or figure given in the evidence is important, along with other complicated facts, which it is difficult for memory alone to retain during a trial of any length. As we stated previously, all other officials of the court are permitted to take notes in order to clarify complex evidence which strains the memory.

The primary case we find in Indiana prohibiting such practice by a juror in *Cheek* v. *State* (1871), 35 Ind. 492. It states as a reason for the rule that a juror is not permitted to take notes (at p. 495):

> "The juror is to register the evidence, as it is given, on the tablets of his memory, and not otherwise. Then the faculty of the memory is made, so far as the jury is concerned, the sole depository of all the evidence that may be given; unless a different course be consented to by the parties, or the court."

Ewbanks Indiana Criminal Law, Symmes Ed., § 497 repeats this same statement but offers no new support thereof. In support of this statement the case cites only one treatise: Burrill Cir. Ev. (2d ed.) 1859, p. 108. A reference to this citation shows that the statement made in *Cheek* v. *State, supra,* was taken from that book, and it cites no authority whatsoever in support of the rule. In our opinion the "tablet of his

memory" is a very weak reed for a juror to lean upon in place of written notes. We are inclined to follow what common sense in everyday life tells us is true. At the same time, we do not mean to approve continuous note-taking by jurors, which would distract from listening to the evidence. Minor note-taking for the purpose of supporting the juror's memory, in our opinion, is reasonable and certainly should not be disapproved. Most jurors are men of sensibility, and to be deprived of taking notes would, to them, appear to be a rather ridiculous court deprivation in many situations, such as during a prolonged trial with complicated facts.

In the case before us the appellant has not shown any irreparable harm. In *Cluck* v. *The State* (1872), 40 Ind. 263, 272, this Court qualified the *Cheek* case, *supra,* to a large extent:

> "It is next urged that the court should have granted the appellant a new trial, because during the progress of the trial, one of the jurors, with pencil and paper, took notes of the evidence, and in support of this objection we are referred to the case of *Cheek* v. *The State,* 35 Ind. 492. The ruling in that case was based upon the ground that 'two of the jurors, over the objection of the defendant, and after the court had told them they must not do so, persisted in writing down notes of the evidence.'
>
> "In the case under consideration, the defendant did not object to the jurors taking notes, nor did the juror act in disobedience to the orders of the court. As the defendant did not, at the time, object, we will presume that it was done with his consent, and he cannot be heard here to object to what he consented to in the court below. It is not shown that the defendant did not know that the juror was taking notes." See also: *Batterson* v. *The State* (1878), 63 Ind. 531; *Long et al.* v. *The State* (1884), 95 Ind. 481.

It is stated in 14 A. L. R. 3d 831, *Jury's Trial Notes,* p. 834: "Most authorities take the view that the making and use of trial notes by the jury is not misconduct but is ▮ proper and may even be desirable where it is unattended by undue consumption of time." Our judgment

is that it is a discretionary matter with the court whether or not it thinks it would be reasonable for jurors to take some notes to support their memory with reference to the complexities of any particular case. An abuse of such discretion must be shown to constitute error. Judges and lawyers alike, as we have previously said, consistently take notes during trial proceedings for the very same purpose. We see no reason why, normally, a juror should be deprived of this assist or help in arriving at his verdict. We find no error presented on this point.

Lastly, appellant contends the verdict of the jury is not sustained by sufficient evidence and is contrary to law. We find the evidence previously set out herein is sufficient to convict the appellant of robbery. We stated in *Smith* v. *State* (1969), 252 Ind. 148, 246 N. E. 2d 765, 767:

> "* * * Entering a business premises with a gun, forcing the employees to lie on the floor, and taking items from the store is enough evidence to sustain a conviction for robbery. It is not necessary to sustain a conviction for robbery that the property be taken from the actual person of another. It is sufficient if the property taken is from the personal presence or personal protection of the victim. *Mahoney* v. *State* (1932), 203 Ind. 421, 180 N. E. 580; *Chizum* v. *State* (1932), 203 Ind. 450, 180 N. E. 674."

Thus, the judgment of the trial court is affirmed.

Hunter, C.J., and Givan, J., concur. Jackson, J., concurs in result; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—This is a companion case to *Smith* v. *State* (1969), 252 Ind. 148, 246 N. E. 2d 765, and I adhere to my dissent in that case.

Note.—Reported in 263 N. E. 2d 161.